COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and Senior Judge Bumgardner

JODY CHYENNE LAMBERT

MEMORANDUM OPINION*

v.      Record No. 1926-15-2                    PER CURIAM
                                                MAY 3, 2016

APPOMATTOX COUNTY
 DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF APPOMATTOX COUNTY
Donald C. Blessing, Judge

(Kemper M. Beasley, III; Joyce M. Coleman, Guardian *ad litem* for
appellant; Lawson & Beasley, on brief), for appellant.

(Michael J. Brickhill; David P. Mitchel; Yvonne Z. Schewel,
Guardian *ad litem* for the minor child, on brief), for appellee.


Jody Chyenne Lambert (mother) appeals the order terminating her parental rights to her

child. Mother argues that the trial court erred by (1) finding that she failed to substantially remedy

the conditions which led to the abuse and neglect finding and foster care placement of the child and

(2) finding that the remedial services offered by the Appomattox County Department of Social

Services (the Department) were sufficient. Upon reviewing the record and briefs of the parties,

we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of

the trial court. See Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Mother's child was born prematurely in July 2014. The child required hospitalization for approximately a month after her birth. A few days after the child's birth, the hospital contacted the Department because of concerns about mother's behavior and parenting skills. Mother has been diagnosed with autism spectrum disorder, personality disorder, depressive disorder, depression, asthma, and Type 1 diabetes.

The Department conducted a home visit. Mother lived with her brother and her mother (maternal grandmother). The house was cluttered, had "little to no" floor space, and had safety hazards. The home smelled like dog urine, and the social worker observed a dog urinating on the floor. There were four adult dogs and five puppies living in the home.

The Department sought an emergency removal, and the child was removed on August 26, 2014, before she was discharged from the hospital. Since the removal, the Department recommended that mother participate in mental health services. Mother insisted on acquiring mental health services without the Department's assistance; however, as of May 14, 2015, mother still had not acquired any mental health services.

While the child was in foster care, the Department spoke with mother about the cleanliness of her home. In October 2014, the Department offered a service where a professional would help mother clean the home, but mother refused.

The Department referred mother for a psychological evaluation and parenting assessment with Dr. A.J. Anderson. Mother participated in the evaluations with Dr. Anderson, but she was suspicious of the results. Consequently, she completed another psychological evaluation and parenting assessment with Dr. Vivian L. Begali on January 9, 2015. Both doctors expressed concern about mother's ability to effectively parent the child due to her mental health issues. Both recommended intensive mental health therapy.

From September 17 until December 1, 2014, mother participated in family coaching and supervised visitations. Since mother showed little to no improvement in parenting skills or maternal bonding, the services were cancelled.

On February 5, 2015, the Appomattox County Juvenile and Domestic Relations District Court entered an order terminating mother's parental rights pursuant to Code § 16.1-283(B). Mother appealed to the circuit court.

On April 16, 2015, the circuit court entered an order finding that the Department did not provide reasonable and appropriate services to mother. The circuit court overruled and dismissed the Department's petition to terminate mother's parental rights, but retained jurisdiction over the matter.

The trial court wanted the Department to explain clearly what it expected of mother. The Department then provided a detailed plan and reviewed it with mother. The Department arranged for additional counseling, parent coaching, and supervised visitations, in which mother participated. The Department also referred mother to parenting classes, which she completed. On May 14, 2015, the Department, mother, and maternal grandmother agreed that mother would complete a Virginia Independent Clinical Assessment Program (VICAP) to assess her eligibility for mental health services. Mother completed the VICAP on June 2, 2015 and was found eligible for intensive in-home counseling. Mother started in-home counseling on July 15, 2015. However, at the time of the trial, mother still had not participated in the recommended psychotherapy or supportive reality-oriented mental health treatment and counseling.

The Department also expressed concern about mother's codependency. For the first twelve months that the child was in foster care, mother was engaged three times to three separate men, none of whom were the child's father. At the time of the final hearing, mother was married.

The Department reviewed mother's living situation with her several times, and on April 10, 2015, mother agreed to receive cleaning services. Steri-Clean Services attempted to provide mother with assistance related to hoarding and the cleaning process, but determined that she was not ready for their services. The Department told mother that the house had to be in an appropriate condition by May 18, 2015. When the Department visited the home on May 18, it was not clean and still had safety hazards. On July 15, 2015, the Department visited the home again, and it still was not in an appropriate condition. On August 13, 2015, the Department visited the home again, and all of the previous issues were remedied, with the exception of the carpet.[1] On October 8, 2015, the Department visited the home again. The social worker noted that the condition of the home had regressed. There were five dogs in the home. Clutter was everywhere, and dog feces were in the middle of the floor.

Despite all of the services provided, including the counseling and classes, mother still was unable to recognize the child's developmental and safety needs. Mother never progressed beyond supervised visitations. Mother "has periods of relative stability when she is more or less functional and this stability alternates with episodes of dysfunction or psychosis where her behavior is erratic, [sic] judgment and control are markedly impaired . . . ." The Department was concerned that mother's "erratic moods, emotions, and thought processes represent a significant risk to the safety of any child in her care."

In September 2015, the Department filed another petition to terminate mother's parental rights and a foster care plan with the goal of adoption. On November 6, 2015, the parties appeared before the circuit court. After hearing all of the evidence and argument, the trial court found that it was in the child's best interests to terminate mother's parental rights pursuant to Code § 16.1-283(C)(2). The trial court noted that there were some improvements made in the

---

[1] The carpet was determined not to be sanitary for a child.

condition of the home, but there also has been "back sliding." The trial court also found that mother has not taken any responsibility for her actions or why the child has been placed in foster care; instead, she "shifts the blame." The trial court stated that mother "either can't or has a great reluctance to put this child's needs first." Furthermore, the trial court found that mother has not accepted or trusted outside services, and "[p]erhaps she is incapable of receiving that and doing what they say." On November 18, 2015, the trial court entered final orders terminating mother's parental rights and approving the foster care plan with the goal of adoption. This appeal followed.

ANALYSIS[2]

*Assignment of error #1*

Mother argues that the trial court erred in finding that she failed to substantially remedy the conditions which led to the child being placed in foster care. She contends she improved the condition of the home. She testified that she removed the carpet from most of the house, and there was no carpet in the child's bedroom. She further explained that the pets do not regularly go to the bathroom on the floor, and if it happens, she cleans it up. Mother also asserts that she has done everything that the Department required of her.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

_____

[2] The Department argues that mother did not preserve her assignments of error pursuant to Rule 5A:18. The Court finds the mother's arguments were preserved in her motions to strike and closing argument.

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

Contrary to mother's assertions, she did not substantially remedy the situation that led to the child being placed in, and remaining in, foster care. The living conditions at the house had regressed from August to October 2015. The Department presented photographs of the house and its condition in October 2015. In addition to the dog feces on the floor, the trial court noted the stacks of items throughout the house, and the fact that nobody could sit down in the kitchen or dining room because of the clutter. Furthermore, the trial court commented on mother's lack of trust in outside services. She was reluctant to engage in services and delayed her involvement. The evidence proved that mother was not in a position to care for the child.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities."

Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Based on the record, the trial court did not err in finding that mother had not substantially remedied the conditions which led to the child being placed in, and remaining in, foster care.

*Assignment of error #2*

Mother argues that the trial court erred in finding that the remedial services provided by the Department were sufficient. After the April 16, 2015 order, the Department provided additional services to mother. However, mother emphasizes there was one incident in which the Department did not teach the mother alternative behavior. In August 2015, the foster mother brought the child to the supervised visit. Mother did not recognize that the child was having difficulty with the transition. Instead, mother scooped up the child and ran outside to show the child two dogs. Mother did not look for traffic. She put the child right in front of the dogs' faces. One dog was tied up, but the other dog was loose. Mother did not realize the danger of placing the child's face so close to the dogs. The foster care mother asked the parenting coordinator if he was going to say something. He said, "well, I guess it's a nice dog . . . because it hasn't bitten her yet." Mother uses this example as evidence that the Department provided inadequate services to improve her parenting skills.

Pursuant to Code § 16.1-283(C)(2), the Department is supposed to provide "reasonable and appropriate efforts" to help mother substantially remedy the conditions that led to the child being placed in, and remaining in, foster care. "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992).

At the November 6, 2015 hearing, the trial court determined that the Department had provided sufficient services to mother. Since the April 16, 2015 order, the Department provided additional counseling services, as well as supervised visitation and parenting classes. It also offered cleaning services. Mother was hesitant to accept the services. She did not trust anyone and tried to blame others for the situation. The trial court stated that mother was perhaps "incapable of receiving [the services] and doing what [the professionals] say."

"The Department is not required 'to force its services upon an unwilling or disinterested parent.'" Logan, 13 Va. App. at 130, 409 S.E.2d at 463-64 (quoting Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986)).

Contrary to mother's arguments, the record provides sufficient evidence to prove that the Department provided reasonable and appropriate services; however, mother was reluctant to use the services. She was unable or unwilling to improve her situation. Consequently, the trial court did not err in finding that it was in the child's best interests to terminate mother's parental rights and approve the goal of adoption.

## CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.